CATHARINE STEVENS, Appellant, *v.* PATRICK CUNNINGHAM, as Administrator of the Estate of BRIDGET WALSH, Deceased, Respondent.

1. MARRIED WOMEN — WHEN EARNINGS BELONG TO WIFE. Under the acts relating to the rights of married women (L. 1860, ch. 90, § 2; L. 1884, ch. 381, § 1) the earnings of the wife from services rendered to a third party, distinct from the common-law duties she owes her husband in the marital relation, in this case as a nurse or attendant, belong to the wife, and she, and not he, is entitled to recover therefor.

2. EVIDENCE AS TO ELECTION TO LABOR ON HER OWN ACCOUNT. The fact that a married woman enters upon an independent employment which she pursues openly for six years, without protest or interference from her husband, shows a sufficient election on her part to labor on her own account and thereby entitle herself to her earnings.

3. PRESUMPTION AS TO EARNINGS. Section 30 of chapter 289 of the Laws of 1902, an act to amend the Domestic Relations Law in relation to a married woman's right of action for wages, etc., was not passed to overcome any common-law presumption that, notwithstanding the passage of the Married Women's Acts, the services of the wife belonged to her husband, but to make clear the principle which is to be found in many of the decisions construing these statutes in the interest of married women and providing a presumption in their favor.

*Stevens* v. *Cunningham*, 75 App. Div. 125, reversed.

(Argued April 28, 1905; decided May 30, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered October 16, 1902, affirming a judgment in favor of the defendant entered upon a dismissal of the complaint by the court at a Trial Term.

This action involves the construction of the following statutes relating to the rights of married women:

Laws of 1860 (Ch. 90, § 2) provides : " A married woman may bargain, sell, assign and transfer her separate personal property, and carry on any trade or business, and perform any labor or services on her sole and separate account, and the earnings of any married woman, from her trade, business, labor or services, shall be her sole and separate property, and may be used or invested by her in her own name."

Laws of 1884 (Ch. 381, § 1) reads : " A married woman may contract to the same extent, with like effect and in the same form as if unmarried, and she and her separate estate shall be liable thereon, whether such contract relates to her separate business or estate or otherwise, and in no case shall a charge upon her separate estate be necessary."

The facts, so far as material, are stated in the opinion.

*Edgar T. Brackett* for appellant. The services rendered by the plaintiff to the defendant's intestate were rendered entirely outside of her husband's household. (L. 1860, ch. 90, § 2 ; L. 1884, ch. 381, § 1.) Under the statutes if a married woman, with the knowledge of her husband, renders services to a third person outside of her husband's household, either pursuant to an express contract or upon an implied one to be inferred from the rendition of the services, she may maintain an action in her own name to recover the price agreed or the value of the services rendered. (*Stokes* v. *Pease,* 79 Hun, 304 ; *Brooks* v. *Schwerin,* 54 N. Y. 343 ; *Reynolds* v. *Robinson,* 64 N. Y. 589 ; *Birkbeck* v. *Ackroyd,* 74 N. Y. 356 ; *Coleman* v. *Burr,* 93 N. Y. 17 ; *Adams* v. *Curtis,* 4 Lans. 164 ; *Sheldon* v. *Button,* 5 Hun, 110 ; *Snow* v. *Cable,* 19 Hun, 280 ; *Carver* v. *Wagner,* 51 App. Div. 47 ; *Matter of Dailey,* 43 Misc. Rep. 552 ; *Briggs* v. *Devoe,* 89 App. Div. 115.)

*William P. Nolan* for respondent. The facts and circumstances of this case bring it within the common-law presumption that the earnings of the wife belong to the husband. This presumption is not here rebutted, and sufficient does not

appear to bring the case within the purview of the so-called married women's statutes. If anything was due for the services rendered, the right of action belonged to Fred Stevens, the husband and head of the family. (*Lashaw* v. *Croissant,.* 88 Hun, 206; *Porter* v. *Dunn,* 131 N. Y. 314; *Stamp* v. *Franklin,* 144 N. Y. 607; *Stokes* v. *Pease,* 79 Hun, 304; *Birkbeck* v. *Ackroyd,* 74 N. Y. 356; *Brown* v. *R. R. Co.,* 19 Misc. Rep. 504; *Blaechinska* v. *Mission Home,* 130 N. Y. 497; *Coleman* v. *Burr,* 93 N. Y. 17; *Matter of Mallery,* 13 Misc. Rep. 595; *Sands* v. *Sparling,* 82 Hun, 401; *Reynolds* v. *Robinson,* 64 N. Y. 589; *Thuringer* v. *R. R. Co.,* 71 Hun, 526; *Matter of Callister,* 153 N. Y. 294.) The legislature of 1902 passed a law giving married women a right of action for wages, etc., unless it is otherwise expressly agreed. This was evidently done to overcome and wipe out the presumption in the husband's favor heretofore existing by common law. (L. 1902, ch. 289.)

BARTLETT, J. At the close of plaintiff's case the defendant's motion to dismiss the complaint was granted, on the ground that the plaintiff being a married woman seeks to recover for services to which her husband was entitled, and that any attempted transfer of the cause of action to her by him was without consideration.

For the purposes of this appeal the plaintiff is entitled to the most favorable view of the evidence, and it is, briefly stated, as follows: The plaintiff, a married woman, living with her husband and several children, resided in Saratoga Springs, and occupied, for the greater portion of the time involved in this controversy, the lower story of a house known as No. 17 Cowen street, in the upper part of which resided one Bridget Walsh, the defendant's intestate, who lived alone.

From the first day of May, 1894, until the first day of May,. 1900, Mrs. Walsh was in delicate health, subject to occasional illness and requiring much attention. During the period above mentioned Mrs. Walsh employed no servant or nurse and was largely dependent upon the ministrations of the.

plaintiff. The intestate was an old woman, the owner of some real estate in Saratoga Springs, and had from time to time business transactions with her agents who looked after her property. The plaintiff made her bed, read and wrote for her, took care of her receipts, washed for her and did almost all of her household work, as she herself was unable to do little if anything; that plaintiff much of the time took up meals to her, which she cooked down stairs, this for six years or more prior to the time when plaintiff moved away from Cowen street, May 1st, 1900, but settled in the immediate neighborhood, about two and one-half blocks distant.

The following is a fair history of a day prior to May 1st, 1900 : In the morning the plaintiff went up stairs, built the fire, made the bed, helped the intestate to dress, went down stairs and took up her breakfast, swept, read to her, sometimes very late in the evening, took up her dinner for her, looked over her receipts, washed dishes, sat with her in the afternoon, sewed for her, sometimes cooked supper, read to her in the evening, helped her to take off her clothes and go to bed and fixed her stove for the night. Between the first day of May, 1900, and the 12th day of June, 1900, and between the 27th day of June, 1900, and the 16th day of July, 1900, when the intestate died, the plaintiff rendered further and more constant services. The illness of the intestate during this period proved to be her last, as she died on the 16th day of July, 1900. The plaintiff was with the intestate most of the time, including nights, after the first day of May, 1900, except two weeks when she was out of town. These facts were mainly proved by two daughters of the plaintiff, one aged sixteen and the other fourteen years. They are sufficient to show the general character of the services rendered by plaintiff to the intestate. Other witnesses, including the family physician, testified to important details, to which reference need not be made at this time.

The plaintiff testified that her husband said that any amount she might receive for these services should belong to her. The plaintiff and the intestate were not related, and

while living under the same roof were independent tenants of different portions of the premises.

It is obvious that the services rendered by the plaintiff were distinct from those duties which she owed to her husband in the marital relation; she was engaged in the prosecution of a separate calling as nurse and attendant under either an express or implied contract precisely as if she had gone out and worked by the day in different houses throughout the town as a seamstress, a laundress, a nurse or any other calling open to women.

It is clear, upon principle and authority, that the dismissal of the complaint on the ground that the plaintiff seeks to recover for services to which her husband was entitled, is legal error. The intestate had incurred no liability to the husband and the latter is vested with no cause of action against her estate. There is no doubt that notwithstanding the enabling statutes conferring valuable personal and property rights upon married women, they have no effect upon those duties which a wife owes to the husband at common law in the marriage relation.

The cases cited by respondent's counsel do not sustain his contention that the complaint was properly dismissed. A few of them will be referred to. *Reynolds* v. *Robinson* (64 N. Y. 593) shows this state of facts: Plaintiff's wife rendered the services in his house to a boarder therein. She was engaged in no business or service on her own account. She was in charge of his household and as part of her duties rendered the services to a person in her husband's house, by contract with him. She was then working for her husband, and not for herself, or on her own separate account.

*Birkbeck* v. *Ackroyd* (74 N. Y. 356) involved the following state of facts: Plaintiff claimed and recovered judgment for his own services as superintendent of defendant's woolen mill and for the work and labor of his wife and of several minor children; and also as assignee of two adult sons for their own work and labor and that of their wives. This is a case where the wife saw fit to go outside of the family and engage in

joint work with her husband for their benefit. This court held that under the circumstances the husband was entitled to recover for those services which she had voluntarily rendered in his interest.

*Coleman* v. *Burr* (93 N. Y. 17, 30). It was held in this case that the act of 1860 (Chapter 90, Laws of 1860) authorizing a married woman to carry on business and to perform labor on her sole and separate account, did not absolve her from the duty to render to her husband such services in his household as are commonly expected of a married woman in her station of life. Whatever services are thus rendered are not "on her sole and separate account," and in rendering them she still bears to him the common-law relation. Judge EARL says, at bottom of page 30 : " A married woman owes no duty to her husband to go out of his house and render service for persons not members of his family, and she owes him no duty to carry on any business in his house, or elsewhere, for the purpose of earning money for him, and the purpose of the statute is fully accomplished if she be permitted to retain as her own money or property obtained by her in such business or by the rendition of such services."

The principle here laid down is applicable to the case at bar. The plaintiff was under no obligation, so far as her husband was concerned, to enter into any contract, express or implied, to serve a person outside of his house and to whom he was under no obligation ; she having done so, the statute permits her to collect and retain her earnings in such employment.

*Porter* v. *Dunn* (131 N. Y. 314, 317) is a case where the plaintiff's wife, while attending to the household duties and helping her husband in his business, and being engaged in no occupation separate from that devolving upon her as wife, also attended upon the deceased, who was a boarder in plaintiff's house, and cared for him as a nurse. This court held that under the circumstances the right of the husband to maintain the action for such services was clear.

In the oral argument in the case before us the respondent's

counsel urged that no election was shown on the part of the plaintiff to engage in a separate business. We have here the situation where a wife for a period of six years or more was engaged openly in a separate occupation without protest or interference from her husband, the record disclosing that he was entirely willing that she should recover for her services. This is a sufficient election on the part of the wife to embark in an outside undertaking whereby she may earn wages on her own account, no complaint being made that she was in any way neglecting her duties as a wife. It is common experience that wives go out to service in various domestic callings — the washerwoman, the seamstress, the nurse, and other callings, to which reference has already been made. The fact that a married woman enters upon such independent employment is a circumstance showing that she intended to avail herself of the privilege conferred by the enabling statutes.

*Brooks* v. *Schwerin* (54 N. Y. 343) is a case where a married woman was returning home from her labor in the evening and was knocked down by a horse attached to a wagon and severely injured. She brought an action to recover damages, and it was urged as a defense that the right of action was in the husband. On the trial it appeared that the plaintiff not only took charge of her family, but that she was working out and earning ten shillings a day. At page 349 Judge Earl says: " She was earning in an humble capacity ten shillings a day, and so far as she was disabled to earn this sum the loss was hers, and the jury had the right to take it in account in estimating her damages." It was also held that her services, as wife, in the household belonged to her husband, and so far as the injury disabled her from performing such services the loss was her husband's and she could not recover. We have here a very clear recognition of the right for which the plaintiff now contends.

In *Blaechinska* v. *Howard Mission and Home* (130 N. Y. 497) the law applicable to the case at bar is very fully recognized in the opinion of Vann, J. In this case the plaintiff, a

married woman, was permitted to testify, under objection, that before the accident she did the household duties and worked for her husband as a seamstress, receiving from him, under agreement, a weekly salary, but, because of the injury, was no longer able to do this work.  The court charged that if plaintiff was entitled to recover she could recover for the loss of wages she had sustained.  This was held error; that the plaintiff could recover actual damages only; and that the consequential damages for loss of her services, both in the house and as seamstress, could be recovered only in a separate action brought by her husband.  The opinion discusses the authorities very thoroughly and the following statements are found therein (p. 501): " It seems to be the policy of the legislature, as indicated by recent enactments, to relieve every married woman of the disability of coverture in contracting with any one except her husband."   At page 502 the case of *Brooks* v. *Schwerin* (*supra*) is discussed and the court says : " The distinction between that case and this is that in the former the wife worked for a third person, while in the latter she worked for her husband.  When she worked for the stranger it was on her sole and separate account, and the enabling act protected her contract.  When she worked for her husband it was on his account and the statute did not apply."   This last quotation lays down the law applicable to the case at bar very clearly.   The plaintiff has brought herself within the enabling statutes enlarging the rights of married women. (Laws of 1860, chap. 90, § 2; Laws of 1884, chap. 381 § 1.)

The counsel for respondent alludes to a recent law (Chap. 289, Laws of 1902), concededly not applicable to the case at bar, having been passed since the services involved therein were rendered, but argues that this statute was evidently passed to overcome the presumption in the husband's favor under the common law.   The statute is entitled "An act to amend the Domestic Relations Law in relation to the rights of married women."   It amends the Domestic Relations Law by adding to article III the following: " § 30.  A married

woman shall have a cause of action in her own sole and separate right for all wages, salary, profits, compensation or other remuneration for which she may render work, labor or services, or which may be derived from any trade, business or occupation carried on by her, and her husband shall have no right of action therefor, unless she, or he, with her knowledge or consent, has otherwise expressly agreed with the person obligated to pay such wages, salary, profits, compensation or other remuneration. In any action or proceeding in which a married woman or her husband shall seek to recover wages, salary, profits, compensation or other remuneration for which such married woman has rendered work, labor, or services, or which was derived from any trade, business or occupation carried on by her, or in which the loss of such wages, salary, profits, compensation or other remuneration shall be an item of damage claimed by a married woman or her husband, the presumption of law in all such cases shall be that such married woman is alone entitled thereto, unless the contrary expressly appears."

We are of opinion that this statute was not passed to overcome any presumption in the husband's favor existing at common law, but is evidently designed to make perfectly clear that principle which is to be found in many of the decisions construing the enabling statutes in the interest of married women and providing a presumption in their favor.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

HAIGHT, VANN and WERNER, JJ., concur; CULLEN, Ch. J., GRAY and O'BRIEN, JJ., dissent.

Judgment reversed, etc.